**THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **J.C.,** *a Minor,* **and R.P.,** *Individually and as Parent and Natural Guardian of J.C.,* | : | No. 3:10cv1779 |
| **Plaintiffs** | : | **(Judge Munley)** |
| **v.** | : | |
| **LAKELAND SCHOOL DISTRICT,** | : | |
| **Defendant** | : | |

## MEMORANDUM

Before the court for disposition is Defendant Lakeland School District's motion to dismiss the Plaintiffs' complaint. The motion has been briefed and is ripe for disposition.

## BACKGROUND

Plaintiff J.C. ("J.C.") is a minor who lives with his mother, Plaintiff R.P. in Jermyn, Pennsylvania.[1]  (Compl. ¶¶ 1, 2 (Doc. 1)).  J.C. is a special education student with an emotional disturbance disability.  (Id. ¶ 14).  On October 21, 2010, J.C. filed a special education due process hearing complaint alleging that Defendant Lakeland School District (the "School District" or "District") denied J.C. a free appropriate public education ("FAPE") in the least restrictive environment within the meaning of the Individuals with Disabilities Education Act, 20 U.S.C. § 1400, *et seq* ("IDEA").  (Id. ¶ 15).

A special education due process hearing was held on May 30, 2010. (Id. ¶ 16).  The hearing officer made the following findings of fact and rulings:

---

[1] The caption of this case on the docket reads, "J.C. a minor, by and through his parent, R.P."  The caption on the docket shall be changed to reflect the caption in this memorandum, above.  (See Compl. ¶¶ 1, 2 (Doc. 1)).

> The Student was denied a FAPE from October 22, 2007 through September 16, 2009 less August 20, 2008 through October 21, 2008. . . . The Student is awarded compensatory education not to exceed 423 days. . . . The IEP team is directed to convene [. . .] to determine a plan of remediation and the consequent appropriate application of the award of compensatory education [. . . .] The Students [sic] rights under Section 504 of the Rehabilitation Act were not violated. . . .

(Id. ¶ 16). Plaintiffs allege that the District failed to provide a FAPE which resulted in discrimination based upon disability. (Id. ¶ 17). Plaintiffs also allege that the District segregated J.C. based upon his disability which resulted in discrimination based upon disability. (Id. ¶ 18). According to the plaintiffs, the District has not implemented the hearing officer's decision. (Id. ¶ 39, 40). The Plaintiffs allege that the District treated J.C. dissimilar from other students. (Id. ¶ 41).

Plaintiffs' complaint was filed on August 24, 2010. (Doc. 1). The complaint raises six claims. Count I alleges that the District discriminated against J.C. by failing to provide a FAPE under the Rehabilitation Act of 1973 ("Rehabilitation Act"), 29 U.S.C. § 794. Count II alleges that the District discriminated against J.C. by not educating J.C. in the least restrictive environment under the Rehabilitation Act. Count III alleges discrimination under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, and under 42 U.S.C. § 1983. Count IV alleges failure to implement the hearing officer's decision under § 1983, the Fourteenth Amendment, the Rehabilitation Act and the IDEA. Count V appeals the hearing officer's decision regarding the Rehabilitation Act. Count VI demands attorney's fees under the IDEA, Rehabilitation Act, ADA, and 42 U.S.C. § 1985.[2]

The District filed its motion to dismiss on November 22, 2010,

---

[2] Count VI is mislabeled in the complaint as Count VII.

seeking dismissal of each of the Plaintiffs' claims.  (Doc. 5).  The parties
filed respective briefs in support and opposition to the District's motion.
Because the District did not file a reply brief– and the time for its filing has
elapsed– the motion is ripe for disposition.

**JURISDICTION**

The court has federal question jurisdiction over this case brought
under the Rehabilitation Act, IDEA, ADA, § 1983, and the Fourteenth
Amendment.  See 28 U.S.C. § 1331 ("The district courts shall have original
jurisdiction of all civil actions arising under the Constitution, laws, or
treaties of the United States."); 28 U.S.C. §§ 1343(a)(3), (4) (granting
district courts jurisdiction over civil actions brought to redress deprivations
of constitutional or statutory rights by way of damages or equitable relief).

**LEGAL STANDARD**

Before the court is the District's motion to dismiss for failure to state
a claim upon which relief can be granted.  FED. R. CIV. P. 12(b)(6).   When
a 12(b)(6) motion is filed, the sufficiency of the allegations in the complaint
is tested.  Granting the motion is appropriate if, accepting as true all the
facts alleged in the complaint, the plaintiff has not pleaded "enough facts to
state a claim to relief that is plausible on its face," or put another way,
"nudged [his or her] claims across the line from conceivable to plausible."
Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007).  The plaintiff
must describe "enough facts to raise a reasonable expectation that
discovery will reveal evidence of" each necessary element of the claims
alleged in the complaints.  Phillips v. County of Allegheny, 515 F.3d 224,
234 (3d Cir. 2008) (quoting Twombly, 550 U.S. at 556).  Moreover, the
plaintiff must allege facts that "justify moving the case beyond the
pleadings to the next stage of litigation."  Id. at 234-35.

In relation to Federal Rule of Civil Procedure 8(a)(2), the complaint

need only provide "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests,'" Twombly, 550 U.S. at 555 (citation omitted).   "[T]he factual detail in a complaint [cannot be] so undeveloped that it does not provide a defendant the type of notice of claim which is contemplated by Rule 8." Phillips, 515 F.3d at 232 (citation omitted).  "Rule 8(a)(2) requires a 'showing' rather than a blanket assertion of an entitlement to relief." Id.

The issue is whether the facts alleged in the complaint, if true, support a claim upon which relief can be granted.  In deciding a 12(b)(6) motion, the court must accept as true all factual allegations in the complaint and give the pleader the benefit of all reasonable inferences that can fairly be drawn therefrom, and view them in the light most favorable to the plaintiff.  Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997).  However, "we are not bound to accept as true a legal conclusion couched as a factual allegation."  Ashcroft v. Iqbal, – U.S. –,  129 S. Ct. 1937, 1949-50 (2009) (internal quotations omitted).  The Supreme Court has counseled that a court examining a motion to dismiss should, "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." Iqbal, 129 S. Ct. at 1950. Next, the court should make a context-specific inquiry into the "factual allegations in [the] complaint to determine if they plausibly suggest an entitlement to relief."  Id. at 1950-51.

To decide a motion to dismiss, a court generally should consider only the allegations in the complaint, exhibits attached to the complaint, matters of public record, and documents that form the basis of a claim.  See In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997); Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192,

4

1196 (3d Cir. 1993).

**DISCUSSION**

As a preliminary matter, the court notes that "[i]n 1975 Congress provided that it would make funds available for state special education programs on the condition that states implement policies assuring a 'free appropriate public education' for all their disabled children."  Susan N. v. Wilson Sch. Dist., 70 F.3d 751, 755-56 (3d Cir. 1995) (quoting 20 U.S.C. § 1412(1)).  The Individuals with Disabilities in Education Act (IDEA) thus mandates an education for disabled children that "'consists of educational instruction specifically designed to meet the unique needs of the handicapped child, supported by such services as are necessary to permit the child "to benefit" from the instruction.'"  Id. at 756 (quoting W.B. v. Matual, 67 F.3d 484, 491 (3d Cir. 1995)).  The IDEA implements this mandate through the creation of an "Individual Education Program ('IEP'), for each child classified as disabled."  Id.  These IEPs contain "a specific statement of a student's present abilities, goals of improvement, services designed to meet those goals, and a timetable for reaching the goals via the services."  Id.  While special services are available to such students, "[t]o the extent possible, however, a school must 'mainstream' disabled students–that is, instruct them in a regular, not special, education setting."  Id. (quoting 20 U.S.C. § 1412(5)).

Parents have a variety of procedural rights under the IDEA: they "may examine all relevant records concerning evaluation and placement of their children"; "must receive prior written notice when a school proposes or refuses to alter a placement"; "may contest in an impartial due process hearing decisions regarding the evaluation of their child or the appropriateness of the child's program"; "may appeal the decision from such a hearing to the state education agency"; and "may obtain judicial

5

review of the administrative decision." Id.

This case involves, in part, such a review of an administrative decision, as well as other statutory and constitutional claims related to the provision of education to J.C. The court will address the School District's motion to dismiss the Plaintiffs' complaint, taking each count in order.

**1. Plaintiffs' Claims Under the Rehabiliation Act**

Counts I and II of the Plaintiffs' complaint raise claims under the Rehabilitation Act and we will address them jointly, as the parties addressed them jointly in their briefs. Section 504 of the Rehabilitation Act states:

> No otherwise qualified individual with a disability in the United States, as defined in section 705(20) of this title, shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance or under any program or activity conducted by any Executive agency or by the United States Postal Service.

29 U.S.C. § 794(a).

"[A] plaintiff can prove an [Rehabilitation Act] violation where (1) he is 'disabled' as defined by the Act; (2) he is 'otherwise qualified' to participate in school activities; (3) the school or the board of education receives federal financial assistance; and (4) he was excluded from participation in, denied the benefits of, or subject to discrimination at, the school." Andrew M. v. Delaware Cnty Office of Mental Health and Mental Retardation, 490 F.3d 337, 350 (3d Cir. 2007) (internal quotation and citation omitted).

As the District admits, the Plaintiffs have alleged that J.C. is a qualified individual with a disability. (See Def.'s Br. Supp. Mot. Dismiss at 5 (Doc. 8); Compl. ¶ 14, 20). The District also does not dispute that it receives federal funds. (Compl. ¶ 21). Accordingly, the only contested element of the prima facie case of a Rehabilitation Act violation is whether

J.C. was denied the benefits of the school or subjected to discrimination at the school.  Specifically, the District argues that a plaintiff must allege that he was denied the benefits of his school because of his disability, citing Andrew M., 490 F.3d at 349.  The Plaintiffs argue that the "because of" requirement is a distinct hurdle only to those children under three who fall under Part C of the IDEA, not those between three and twenty-one years of age who fall under Part B.  Compare 20 U.S.C. § 1431, et seq. with § 1412, et seq.  For plaintiffs under Part B, an IDEA violation is almost always a violation of the Rehabilitation Act.  See Andrew M., 490 F.3d at 350; see also Ridgewood Bd. of Educ. v. N.E. ex rel. M.E., 172 F.3d 238, 253 (3d Cir. 1999) (stating that, in addition to the four elements of a § 504 violation, a plaintiff must show that the defendant knew or should have known that the plaintiff was disabled, "[b]ut a plaintiff need not prove that defendants' discrimination was intentional.").

The confusion between the parties seems to stem, at least in part, from the District's interpretation of statements of the United States Court of Appeals for the Third Circuit in Andrew M.  There, in order to determine whether parents of two handicapped two-year-olds could receive attorney's fees under the Rehabilitation Act, the court was required to determine whether the district court had erred in finding a violation of the Rehabilitation Act, since Part C of the IDEA does not provide for attorney's fees.  Andrew M., 490 F.3d 349-50.  The district court in that case, relying on language in N.E. ex rel. M.E., found that because the plaintiffs had proven a violation of the IDEA they necessarily had proven a violation of the Rehabilitation Act.  The Third Circuit reversed the district court's grant of summary judgment on the Rehabilitation Act claim.  Andrew M., 490 F.3d at 351.

The Third Circuit noted that a "qualified handicapped person" under §

7

Case 3:10-cv-01779-JMM   Document 10   Filed 04/05/11   Page 8 of 22


504 of the Rehabilitation Act is defined in the regulations as anyone "to whom a state is required to provide a free appropriate public education under section 612 of the Education of the Handicapped Act[.]" Id. (quoting 34 C.F.R. § 104.3(l)(2)(iii)). The Third Circuit's following explanation underlies the arguments of the plaintiffs in this case:

> Based on this language, it is clear why violations of Part B of the IDEA are almost always violations of the [Rehabilitation Act]. Under § 612 of the IDEA, states accepting federal funds must provide children of a certain age a free and appropriate public education. 20 U.S.C. § 1412. The regulations accompanying the [Rehabilitation Act] adopt this requirement and provide that a handicapped person is one "to whom a state is required to provide a free appropriate public education under section 612. . . ." 34 C.F.R. § 104.3( l). Therefore, when a state fails to provide a disabled child with a free and appropriate education, it violates the IDEA. However, it also violates the [Rehabilitation Act] because it is denying a disabled child a guaranteed education merely because of the child's disability. It is the denial of an education that is guaranteed to all children that forms the basis of the claim. Therefore, a plaintiff can prove [a Rehabilitation Act] violation where "(1) he is 'disabled' as defined by the Act; (2) he is 'otherwise qualified' to participate in school activities; (3) the school or the board of education receives federal financial assistance; and (4) he was excluded from participation in, denied the benefits of, or subject to discrimination at, the school." Ridgewood, 172 F.3d at 253.

Id. at 350. While that analysis is dispositive of the issue before us in this case, the Third Circuit was required to analyze further in Andrew M. There, the plaintiffs were under the age of three, falling under Part C of the IDEA. Children falling under Part C are not entitled to A FAPE under § 612. Id. at 350. Thus, they were not eligible for the de facto equivalence of a violation of the IDEA under Part B and a violation of the Rehabilitation Act.[3]

---

[3] The court explained:

> As we have established, children denied services under Part B of the IDEA are "otherwise qualified"

In the case before the court, the School District quotes the language from <u>Andrew M.</u> immediately following the Third Circuit's analysis we describe above: "A plaintiff cannot make out an [Rehabilitation Act] claim simply by proving (1) that he was denied some service and (2) he is disabled.  The state must have failed to provide the service for the sole reason that the child is disabled." <u>Id.</u> (citing <u>Menkowitz v. Pottstown Mem'l Med. Ctr.</u>, 154 F.3d 113, 124 (3d Cir. 1998)).  In relying on this statement, the School District ignores the thrust of the Third Circuit's analysis: that qualified disabled children over three who are denied a FAPE in violation of the IDEA under Part B have, by the definition set forth in 34 C.F.R. § 104.3(l)(2)(iii), been denied the school's services or discriminated against

> to participate in school and are denied that education because of their disabilities.  However, children under the age of three, who are covered by Part C of the IDEA, are not entitled to a free and appropriate education under § 612.  More specifically, the only reason children receiving services under Part C of the IDEA are entitled to such services is by reason of their disability.  Therefore, when an agency violates Part C of the IDEA, it does not use disability as a basis to deny a child something to which he is entitled.  Rather, the state denies a child services to which he is entitled only because of his disability but on some other basis.  In this case, the reason the M twins' services fell short was not because they were disabled, as is the case when children under Part B of the IDEA are denied the education guaranteed to non-disabled children, but because the County misunderstood the concept of natural environment.  While this is a violation of the IDEA, it is not a violation of the [Rehabilitation Act].

<u>Andrew M.</u>, 490 F.3d at 350.

9

because of their disability.[4]  See also N.E. ex rel. M.E., 172 F.3d at 253 ("In addition, the failure to provide a free appropriate public education violates IDEA and therefore could violate § 504.  See [W.B. v. Matula, 67 F.3d 484, 492-93 (3d Cir. 1995) *abrogated on other grounds by* A.W. v. Jersey City Public Schools, 486 F.3d 791 (3d Cir. 2007)] (stating that IDEA and § 504 impose nearly identical duties and noting that § 504's implementing regulations require that schools provide a 'free appropriate public education')."); see also L.T. v. Mansfield Twp. School Dist., No. 04CV1381, 2007 WL 2332308, *2-5 (D.N.J. 2007) (explaining that Andrew M. does not require a plaintiff under the Rehabilitation Act to prove discrimination because of his disability beyond proving a violation of Part B of the IDEA).

Accordingly, we determine that the Plaintiffs have adequately pled a violation of § 504 of the Rehabilitation Act.  As noted above, the District does not contest that J.C. is a qualified individual with a disability.  Insofar as J.C. has alleged a violation of Part B of the IDEA, by way of his allegation that the hearing officer found such a violation, it is necessarily the case that he has alleged a violation of the Rehabilitation Act.  The District's motion to dismiss will be denied with respect to Counts I and II.

## 2. Plaintiffs' Claim Under the ADA

Count III of the Plaintiffs' complaint claims discrimination under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 and 42 U.S.C.

---

[4] The plainitff in Menkowitz was an adult surgeon with attention-deficit disorder who brought claims under the Rehabilitation Act and the ADA after his hospital privileges were suspended.  Menkowitz, 154 F.3d at 115.  Thus, like the plaintiffs in Andrew M., he stated no claim under Part B of the IDEA, and needed to independently prove that he had been discriminated against because of his disability.

§ 1983.[5]  "In order to make out a prima facie case of disability discrimination under the ADA, [a plaintiff] must establish that she (1) has a 'disability,' (2) is a 'qualified individual,' and (3) has suffered an adverse . . . action because of that disability."  Turner v. Hershey Chocolate U.S., 440 F.3d 604, 611 (3d Cir. 2006).  Thus, the analysis of the Plaintiffs' claim under the ADA is very similar to the Rehabilitation Act analysis, described above.  See  McDonald v. Com. of Pa., Dept. of Public Welfare, Polk Center, 62 F.3d 92, 94 -95 (3d Cir. 1995) ("Whether suit is filed under the Rehabilitation Act or under the Disabilities Act, the substantive standards for determining liability are the same.").

As above, with respect to the Plaintiffs' claims under the Rehabilitation Act, the District argues here that the Plaintiffs have failed to allege that J.C. has suffered an adverse action because of his disability. Reading the complaint in a light most favorable to the plaintiffs, we find that they have sufficiently alleged facts which would support a claim for a violation of the ADA.  It is not disputed that J.C. is a qualified individual with a disability.  That being the case, he was was entitled to a FAPE.  The Plaintiffs allege that a FAPE was denied.  Having alleged that he, as a disabled student, has been deprived benefits and services to which all students are entitled, J.C. has necessarily alleged he was discriminated

---

[5] The Plaintiffs concede that dismissal of the 1983 aspect of his ADA claim under Count III is appropriate.  (Br. Opp. Mot. Dismiss at 5 (Doc. 9) ("Plaintiffs agree to have the Section 1983 aspect of their ADA, IDEA and RA claims in Count III and IV dismissed from this matter.").  Accordingly, the District's motion to dismiss will be granted with respect to that aspect of the claim.  Plaintiffs, however, argue that regardless of whether their claim under § 1983 is valid, they have still pleaded a cause of action under the ADA directly, and we will address that claim.

against because of his disability.[6]  Accordingly, the District's motion to dismiss will be denied.

### 3. Plaintiffs' Claim Under Count IV: failure to implement the hearing officer's decision under § 1983, the Fourteenth Amendment, the Rehabilitation Act and the IDEA

Count IV of the Plaintiffs' complaint alleges that the District failed to implement the hearing officer's decision.  The Plaintiffs raise this claim under § 1983, the Fourteenth Amendment, the Rehabilitation Act, and the IDEA.

The District moves to dismiss the portion of the claim based on § 1983.  The Plaintiffs concede that dismissal of the § 1983 aspects of their IDEA and Rehabilitation Act claims in Count IV is appropriate.  (Br. Opp. Mot. Dismiss at 5 (Doc. 9) ("Plaintiffs agree to have the Section 1983 aspect of their ADA, IDEA and RA claims in Count III and IV dismissed from this matter.").  Accordingly, the District's motion to dismiss will be granted with respect to the § 1983 aspects of their IDEA and Rehabilitation Act claims in Count IV.

The Plaintiffs, however, argue they may still (1) raise their Fourteenth Amendment claim via § 1983 and (2)  raise their claims under the Rehabilitation Act and the IDEA directly.  The District challenges the

_____

[6] Though the Rehabilitation Act, ADA, and IDEA begin to appear somewhat redundant, this springs from Congress's intent, in enacting the IDEA, to affirmatively provide educational opportunities to qualified disabled students of school age and Congress's decision to afford relief in concert with existing statutory remedies.  See §1415(l) ("Nothing in [the IDEA] shall be construed to restrict or limit the rights, procedures, and remedies available under the Constitution, the Americans with Disabilities Act of 1990 [42 U.S.C.A. § 12101 et seq.], title V of the Rehabilitation Act of 1973 [29 U.S.C.A. § 791 et seq.], or other Federal laws protecting the rights of children with disabilities. . . .").

Plaintiffs' claims for Due Process and Equal Protection under the
Fourteenth Amendment and we will address those arguments presently.
The District has not moved to dismiss the Plaintiff's claims brought directly
under the IDEA and the Rehabilitation Act, and therefore we will not
analyze those claims.[7]

### a. Due Process Claim

The Plaintiffs' brief clarifies that, under Count IV, the Plaintiffs only
bring a claim for Procedural Due Process, and no claim for Substantive
Due Process.  (Br. Opp. Mot. Dismiss at 7 (Doc. 9) ("By way of this
Memorandum Plaintiffs clarify that they seek redress from procedural due
process violations as opposed to substantive due process violations.").
Thus, the District's motion to dismiss the Plaintiffs' perceived claim of
Substantive Due Process will be denied as moot.

"To prevail 'on a claim under § 1983 for deprivation of procedural due
process rights, a plaintiff must allege that (1) he was deprived of an
individual interest that is encompassed within the Fourteenth Amendment's
protection of 'life, liberty, or property,' and (2) the procedures available to
him did not provide due process of law.'" Chambers, 587 F.3d at 194
(quoting Hill v. Borough of Kutztown, 455 F.3d 225, 234 (3d Cir. 2006)).[8]  A

_____

[7] In their brief, the Plaintiffs maintained that, although the § 1983
aspects of their claims under the Rehabilitation Act, ADA, and the IDEA in
Counts III and IV could properly be dismissed, they had "asserted all of the
necessary elements necessary in their Complaint to establish a *prima facie*
ADA, IDEA and [Rehabilitation Act] claim without a § 1983 claim."  (Br.
Opp. Mot. Dismiss at 5-6 (Doc. 9)).  The District did not file a reply brief in
response to this argument.

[8] The deprivation must also have been committed by a state actor.
Kelly v. Borough of Sayreville, N.J., 107 F.3d 1073, 1077 (3d Cir. 1997).
The parties do not dispute, however, that the District is a state actor.

court must "'first determine whether the asserted individual interests are encompassed within the fourteenth amendment's protection of life, liberty, or property.'" Id. (quoting Baraka v. McGreevey, 481 F.3d 187, 205 (3d Cir. 2007)).  Courts recognized that "[p]roperty interests are 'created and their dimensions defined by existing rules or understandings that stem from an independent source such as state law–rules or understandings that secure certain benefits and that support claims of entitlement to those benefits.'" Id. at 194-95 (quoting Bd. of Regents of State Colls. v. Roth, 408 U.S. 564, 577 (1972)).  To have a protected property interest "in a benefit, a person clearly must have more than an abstract need or desire for it.  He must have more than a unilateral expectation of it.  He must, instead, have a legitimate claim of entitlement to it.'" Id. (quoting Roth, 408 U.S. at 577).

    "[O]nce it is determined that the Due Process Clause applies, 'the question remains what process is due.'" Cleveland Bd. Of Educ. v. Loudermill, 470 U.S. 532, 541 (1985) (quoting Morrissey v. Brewer, 408 U.S. 471, 481 (1972)).  Courts have found that due process "'is not a technical conception with a fixed content unrelated to time, place and circumstances.'" Matthews v. Eldridge, 424 U.S. 319, 334 (1976) (quoting Cafeteria Workers v. McElroy, 367 U.S. 886, 895 (1961)).  Instead, courts are to inquire into the circumstances of the deprivation to determine what process is required.  Id.  Accordingly, "'[consideration] of what procedures due process may require under any given set of circumstances must begin with a determination of the precise nature of the government function involved as well as of the private interest that has been affected by governmental action.'" Wolff v. McDaniel, 418 U.S. 539, 560 (1974) (quoting McElroy, 367 U.S. at 895).  Three factors generally guide this determination: "First, the private interest that will be affected by the official

14

action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." Matthews, 424 U.S. at 335.  The Third Circuit Court of Appeals has concluded that "[a]t a minimum, due process requires notice and a hearing."  Wilson v. MVM, Inc., 475 F.3d 166, 178 (3d Cir. 2007).  Still, "when that notice and hearing must be provided and how intensive the hearing must be is a determination that depends on the balancing of [the] three interests" articulated in Matthews.  Id.

The Plaintiffs argue that they have sufficiently alleged that J.C. had a protected liberty interest in a public education. (Compl. ¶ 14).  The Plaintiffs also allege that the District "has taken no steps to implement the hearing officer's decision" and therefore deprived the Plaintiffs of due process. (Compl. ¶ 39).  We will grant the District's motion to dismiss on this claim.  Regardless of whether the Plaintiffs have alleged that the District deprived them of a protected property interest, the Plaintiffs admit that they received process before that deprivation.  The Plaintiffs' complaint is not with the lack of process they experienced before losing their property, but instead with the District's later failure to implement the decision of the hearing officer.  Indeed, the Plaintiffs admit that they received a hearing, and they do not contend that this hearing was inadequate or insufficient in any way.  Complaints about implementing the hearing officer's decision do not constitute complaints about the process itself.  As such, the court will grant the motion as it relates to the Plaintiffs' procedural due process claim.

**b. Equal Protection Claim**

15

"To bring a successful claim under 42 U.S.C. § 1983 for denial of equal protection, plaintiffs must prove the existence of purposeful discrimination."  Andrews v. City of Philadelphia, 895 F.2d 1469, 1478 (3d Cir. 1990).  Further, the plaintiff must allege that he "'received different treatment from that received by other individuals similarly situated.'"  Id. (quoting Kuhar v. Greensburg-Salem School Dist., 616 F.2d 676, 677 n.1 (3d Cir. 1980)).  In the context of disability discrimination in education, a plaintiff must allege a violation of constitutional rights, not rights established by the IDEA, in order to maintain a separate § 1983 claim.  A.W., 486 F.3d at 803; see also James S. v. Sch. Dist., 559 F. Supp. 2d 600, 624 (E.D. Pa. 2008) ("Although A.W. eliminated resort to § 1983 as a tool for enforcing IDEA and Section 504 [RA] claims, the decision did not eliminate the availability of § 1983 as a mechanism for asserting disability claims predicated on constitutional violations.").

Here, the Plaintiffs have alleged that J.C. was treated dissimilar from other students.  (Compl. ¶ 41).  Reading the complaint in a light most favorable to the Plaintiffs, we conclude that the Plaintiffs have alleged that the District purposefully discriminated against J.C. by failing to provide him with services and programs which were provided to other similarly situated individuals.  See James S., 559 F. Supp. at 626 (denying motion to dismiss equal protection claims because plaintiff "specifically allege[d] that the District's treatment of James deprived him of equal access to the education granted to children without disabilities.").

**4. Plaintiffs' Appeal of Hearing Officer's Decision on Rehabilitation Act Violation**

Under Count V of their complaint the Plaintiffs appeal the hearing officer's determination that the Rehabilitation Act was not violated.  The District argues that this court cannot overturn the hearing officer's

determination because the Plaintiffs merely dispute the officer's findings of fact. The Plaintiffs allege that "[t]he hearing officer failed to distinguish the school district's failure to provide FAPE under the [Rehabilitation Act] and the school district's illegal discrimination under the [Rehabilitation Act]." (Compl. ¶ 44). The Plaintiffs argue that the hearing officer did not consider whether the Plaintiffs had been discriminated against under the Rehabilitation Act or give any analysis of the act's regulations. Thus, the Plaintiffs argue, the record justifies a conclusion contrary to that of the hearing officer.

The IDEA provides aggrieved parents with the right to judicial review of administrative decisions regarding their children. Susan N., 70 F.3d at 757. A court undertaking such a review "shall receive the records of the administrative proceedings, shall hear additional evidence at the request of a party, and, basing its decision on the preponderance of the evidence, shall grant such relief as the court determines is appropriate." Id. In reviewing the administrative decision, courts are not "free to substitute their own notions of sound education policy for those of the educational agencies they review." Id. Instead, courts must "give 'due weight' to the administrative proceedings." Id. (quoting Board of Educ. v. Rowley, 458 U.S. 176, 205-206 (1982)). Thus, "[w]hen considering an appeal from a state administrative decision under the IDEA, district courts apply a nontraditional standard of review, sometimes referred to as 'modified *de novo*' review." D.S. v. Bayonne Bd. of Educ., 602 F.3d 553, 564 (3d Cir. 2010). In this context, "due weight" means that "'[f]actual findings from the administrative proceedings are to be considered prima facie correct,' and if the reviewing court does not adhere to those findings, it is 'obliged to explain why.'" Id. (quoting Rowley, 458 U.S. at 206). After undertaking such review, "a district court is authorized to make findings based on a the

17

preponderance of the evidence and grant the relief it deems appropriate, including an award of attorney's fees, a requirement for reimbursement for a private educational placement, and a direction for the provision of compulsory education."  Id.

We will deny the District's motion on this point.  The motion is premature because the court has not had an opportunity to review the record and compare the hearing officer's decision to the record.  Parents have a statutory right to seek review of the administrative decision in their child's case, as Plaintiff R.P. has done in this case.  Additionally, we are not required to accept as true all facts found by the hearing officer.  Thus, the motion will be denied until the court has an opportunity to review the administrative decision, beyond the sparse allegations in the complaint.

**5. Plaintiffs' Prayer for Money Damages**

The District argues that money damages are not available to the Plaintiffs.  They note that § 1983, which would otherwise have provided for money damages, is not a proper vehicle for Plaintiffs' claims under the IDEA, Rehabilitation Act, or the ADA, as the Plaintiffs have conceded. "Thus, as a matter of law, Plaintiffs are not entitled to money damages and all claims for money damages must be dismissed."  (Def.'s Br. Supp. Mot. to Dismiss at 11 (Doc. 8)).[9]

_____

[9] In its brief, the District indicates that in C.J.G. v. Scranton School Dist., No. 3:07-CV-1314, 2007 WL 4269816 (M.D. Pa. Dec. 3, 2007) Judge Caputo "dismissed claims for compensatory and punitive damages under IDEA, Section 1983, Section 504, and ADA" and that "we consequently now find that the plaintiffs cannot maintain their claims against these defendants for compensatory and punitive damages under any of the foregoing statutes."  (Def.'s Br. Supp. Mot. to Dismiss at 10-11 (Doc. 8)).
The District's statement misconstrues C.J.G.  The court in C.J.G. did dismiss the Plaintiffs' claim for compensatory damages under the IDEA

18

The Plaintiffs provide an apt quote on this issue, however:

> Defendant argues that because Plaintiffs' ADA and Section 504 claims in Count II and III are based on the same set of facts as the IDEA claims, Plaintiff is precluded from seeking compensatory damages under those statutes as well.  However, compensatory damages, including monetary damages, are available for violations of the ADA and Section 504 [of the Rehabilitation Act]. See A.W. v. Jersey City Public Sch., 486 F.3d 791, 804 (3d Cir. 2007) (en banc); see also Indiana Area Sch. Dist. v. H.H., 428 F. Supp. 2d 361, 364-65 (W.D. Pa. 2006).  The fact that these claims are based on the same conduct as the IDEA claims makes no difference.  Accordingly, Plaintiff may seek compensatory damages for his Section 504 and ADA claims.

Derrick F., 586 F. Supp. 2d at 297.  We agree with this court's decision in Derrick F. that, although the IDEA may not provide relief in the form of compensatory damages, compensatory damages are available on Plaintiffs' claims under the Rehabilitation Act and the ADA and the IDEA explicitly contemplates plaintiffs seeking such relief.  See 20 U.S.C. §

---

because such damages are not available, under the statute.  C.J.G., 2007 WL 4269816 at *8.  The court also dismissed the Plaintiffs' claims under § 504 of the Rehabilitation Act which had been brought under § 1983– an avenue invalidated after A.W., 486 F.3d at 482.  Id. at *7.  The plaintiffs there had not pleaded a claim directly under the Rehabilitation Act, only under § 1983.  Id.  Thus, the court in C.J.G. did not truly dismiss the plaintiffs' claims for damages under the Rehabilitation Act, *per se*, but rather dismissed the plaintiffs' entire claim under § 1983 for violation of the Rehabilitation Act.

C.J.G. did find that punitive damages were not available under the IDEA, Rehabilitation Act, and the ADA.  C.J.G., 2007 WL 4269816 at *8.  That is not relevant in this case because the Plaintiffs have not explicitly sought punitive damages under any statute.  Accordingly, the District's claim that "as a matter of law, Plaintiffs are not entitled to money damages," is, at a minimum, overbroad.  (Def.'s Br. Supp. Mot. to Dismiss at 11 (Doc. 8)).

1415(l).[10]  In addition, the court has determined that the Plaintiffs have stated an equal protection claim under § 1983, which would allow for damages.  Accordingly, the District's motion to dismiss the Plaintiffs' claims for money damages will be dismissed.

**CONCLUSION**

For the reasons stated above, the District's motion to dismiss will be granted, in part, and denied, in part.  The motion is granted with respect to the § 1983 aspects of Counts III and IV of the Plaintiffs' complaint for violations of the ADA, Rehabilitation Act and the IDEA.  The motion is also granted with respect to the Plaintiffs' claim for procedural due process in Count IV of the Plaintiffs' complaint.  The motion is denied in all other respects.  An appropriate order follows.

---

[10] The Plaintiffs indicate they exhausted their administrative remedies under the IDEA prior to filing their complaint under the Rehabilitation Act and the ADA.

**THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **J.C.,** *a Minor,* **and R.P.,** *Individually and as Parent and Natural Guardian of J.C.,* | : | No. 3:10cv1779 |
| | : | |
| **Plaintiffs** | : | **(Judge Munley)** |
| **v.** | : | |
| | : | |
| **LAKELAND SCHOOL DISTRICT,** | : | |
| **Defendant** | : | |

:::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::

## ORDER

**AND NOW**, to wit, this __5th__ day of April 2011, upon consideration of Defendant Lakeland School District's motion to dismiss the Plaintiffs' complaint (Doc. 5), it is HEREBY **ORDERED** as follows:

The motion is **DENIED** with respect to Counts I and II of the Plaintiffs' complaint alleging discrimination under the Rehabilitation Act.

The motion is **GRANTED**, in part, and **DENIED**, in part, with respect to Count III of the Plaintiffs' complaint.

> The motion is **GRANTED** with respect to the Plaintiff's claim for a violation of the ADA brought under § 1983.

> The motion is **DENIED** with respect to the Plaintiff's claim for a violation of the ADA brought under the act itself.

The motion is **GRANTED**, in part, and **DENIED**, in part, with respect to Count IV of the Plaintiffs' complaint

> The motion is **GRANTED** with respect to the § 1983 aspects of their IDEA and Rehabilitation Act claims.

> The motion is **GRANTED** with respect to the Plaintiffs' claim for Fourteenth Amendment Procedural Due Process brought under § 1983.

21

The motion is **DENIED**, as moot, with respect to Fourteenth Amendment Substantive Due Process.

The motion is **DENIED** with respect to Plaintiffs' claim for Fourteenth Amendment Equal Protection brought under § 1983.

The motion is **DENIED** with respect to the Plaintiff's claim for a violations of the Rehabilitation Act and IDEA brought under the acts themselves.

The motion is **DENIED** with respect to the Plaintiffs' claim under Count V appealing the hearing officer's decision.

The motion is **DENIED** with respect to the Plaintiffs' claim for money damages.

**BY THE COURT:**


 **s/ James M. Munley**

**JUDGE JAMES M. MUNLEY**
**United States District Court**

22